Anthony Kunes, Appellee, v. Jose Garcia, Otherwise Called Joe Garcia, Appellant.

Gen. No. 37,928.

Opinion filed February 19, 1936.

JOHN A. BLOOMINGSTON, of Chicago, for appellant.

H. H. PATTERSON, of Chicago, for appellee; EDMUND C. MAURER, of Chicago, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal from a judgment of the superior court of Cook county in the sum of $45,000, entered in an action by plaintiff against defendant. The cause was tried before a jury. The action is based upon the charge that the plaintiff suffered personal injuries through the negligence and wilful and wanton conduct of the defendant. There are several counts in the declaration, in one of which there is a charge to the effect that "defendant, with great force and violence, wilfully and wantonly injured the plaintiff."

On August 7, 1931, the date of the occurrence upon which the action is predicated, plaintiff was a highway police officer connected with the office of the sheriff of Cook county, and was then patroling a paved highway in Cook county known as Rand Road, which runs northwest and southeast, and intersects a paved road known as Golf Road, which runs east and west. At the point of intersection, Rand Road has four lanes, two for traffic running southeast and two for traffic running northwest, and at this point Golf Road is a two-lane highway running east and west, as stated. The accident and injury to plaintiff were caused by the collision between defendant's automobile, which, shortly before the accident, had been proceeding southeast on the Rand Road, and plaintiff's motorcycle, which was proceeding northwest on Rand Road. Near the point of intersection, as shown by a plat introduced in evidence, there is an apron, or widening of each of these roads, indicating that the width of Golf Road adjacent to this point is approximately 386 feet, and

o

the width of Rand Road adjacent thereto is approximately the same. When defendant had reached a point near the center of the intersection of these two roads, he started to turn east into the Golf Road, and at the time of the collision, he had reached the westerly of the two northwesterly going lanes of Rand Road.

Plaintiff's testimony is to the effect that shortly prior to the accident, he was riding northwesterly in the easterly, or outer, lane of the four-lane highway of Rand Road; that when he first saw the car with which he collided, it was proceeding southeast at about 40 miles per hour, and was about a block away from the Golf Road, at which time plaintiff was about a block away from the point where the collision subsequently occurred; that at that time, plaintiff was traveling about 45 miles an hour, and that as he, plaintiff, slowed down, defendant's car, coming south, pulled across the center of the intersection by making a left turn; that defendant started to make the turn to the left about 30 feet north of the center of Golf Road, at which time the plaintiff was going about 35 miles an hour, and that plaintiff then started to turn to the left, when defendant immediately swung back to the right and that plaintiff then swung over to the right, and that plaintiff's motorcycle then struck the rear left wheel of defendant's automobile; that as a result of the collision, plaintiff was thrown up in the air 8 or 10 feet; that he was thrown forward and along the Rand Road a distance of about 20 feet, and as a result thereof, he suffered the injuries of which he complains. He was shown a photograph of the point of the collision and the area surrounding it, which shows two telegraph poles, and plaintiff testified that he landed between these poles.

The record indicates that shortly prior to the accident, defendant had been playing golf at a golf course about four miles northwest of the intersection of the

two highways mentioned; that at about 8:30 in the evening of that day, he left the golf club in his car which he was driving, accompanied by a Mrs. Wintermeyer and her husband, John Wintermeyer, and that together with these persons, he drove southeast on the Rand Road to the point where the accident occurred; that he reached the Golf Road at about 9 o'clock, and that as he was entering the Golf Road, he started to make a left turn, and at that time, he was proceeding at a moderate rate of speed, and that plaintiff was then approaching defendant's car, which was then in the west of the two north going lanes of the Rand Road, and that in order to avoid a head-on collision, defendant turned his car back toward the right, and that the collision referred to occurred when plaintiff's motorcycle was in the west of these two northbound roadways of Rand Road. The defendant testified that at this time, plaintiff was proceeding at a rate of 60 or 70 miles an hour.

At the time of the accident, plaintiff, a police officer, was patrolling this highway, and in approaching this intersection, it was his duty to do so with care and caution. Several witnesses testified as to the distance plaintiff's motorcycle skidded after, and as a result of its collision, with the left rear wheel of defendant's car. A woman riding in a car immediately following the defendant's car, who witnessed the accident, and who was produced by plaintiff, testified that after the accident, the plaintiff and the motorcycle were lying at about the beginning of the north end of the apron on the east side of Rand Road. If this is true, this witness's testimony indicates that plaintiff was thrown approximately 125 feet, as shown by plats introduced in evidence. Another woman produced by plaintiff as a witness testified that she was riding southeast along the Rand Road back of defendant's car, and that as she approached Rand Road, she saw defendant start

to make a left turn into Golf Road, and that suddenly she saw lights flash through the air, and saw an object hurtling through the air. She also testified that when the motorcycle stopped after the accident, it was about 300 feet north of the center of the intersection. Other witnesses placed the point where the motorcycle stopped after the collision at upwards of 400 feet from the intersection where the collision occurred.

Defendant testified that as he turned east into Golf Road, he was going 8 to 10 miles an hour. Other than the testimony of the plaintiff and defendant, there is no positive testimony in the record as to the rate of speed at which defendant was going at the time he was making this left turn into Golf Road.

On the question as to the condition of light and darkness at the time of the accident, there is considerable contrariety of testimony. It is stated that the evening was dark and cloudy. One of plaintiff's witnesses testified that she had been playing golf at the same club where the defendant had played, and that she left when it became so dark she could not see the golf balls. The whole record, however, indicates that it was dusk at the time the accident occurred.

At the close of plaintiff's case, and at the close of all the evidence in the case, defendant moved that the court instruct the jury to find the defendant not guilty as to the charge of wilfulness and wantonness, as well as to the charges of negligence, which motions were denied. The cause was, therefore, submitted to the jury on the question of the wilful and wanton conduct of defendant, when there is no evidence in the record to support this charge.

In spite of any testimony of plaintiff and others as to the speed with which plaintiff approached the intersection in question, the fact remains that his collision with the left rear wheel of defendant's car threw him into the air 8 or 10 feet, as he, himself, testified, and

that the motorcycle was thrown a distance of from 125 to 300 feet, according to the testimony of disinterested witnesses produced by plaintiff. This testimony indicates that plaintiff, at the time in question, was proceeding at a high rate of speed. The undisputed testimony is to the effect that defendant in making this left turn into Golf Road, at no time before the accident, proceeded beyond the west of the northbound lanes of Rand Road, and that at that time, the lights on his car were turned on. Plaintiff was proceeding north in the east lane of this northbound road, and apparently had before him the whole width of this east lane, together with the width of the apron adjacent thereto on the east, as he approached the intersection in question, in which to proceed. If he had been exercising ordinary care as he approached this intersection, these conditions gave him ample opportunity to avoid the collision.

It is our opinion that the court erred in allowing the wilful and wanton charge to go to the jury with no evidence to support it. Also, the fact remains that by the manifest weight of the evidence, plaintiff is not shown to have been free from contributory negligence. The judgment is, therefore, reversed and the cause is remanded.

*Reversed and remanded.*

HEBEL, J., and DENIS E. SULLIVAN, J., concur.